Osborn v. Osborn.

---

CATHARINE A. OSBORN, appellant,

*v.*

JOHN A. OSBORN, respondent.

The evidence in this case was held not to establish the alleged adultery of a wife, but, on the other hand, to show that her husband had abandoned her without cause, and that, consequently, under her cross-bill praying for a divorce for desertion, she was entitled thereto.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

The complainant is entitled to a decree. The proof satisfies

my mind that Mrs. Osborn has been guilty of adultery with one Stratton. Stratton was a married man; he had a wife and two children, and not very long after his intimacy with Mrs. Osborn began, he abandoned them. Very soon after his acquaintance with Mrs. Osborn there was very great familiarity between them. They would take Mr. Osborn's horse and carriage and ride out together. Stratton taught school near by where Osborn lived, and for several weeks boarded at Osborn's. He afterwards taught school two miles distant from Osborn's, but continued boarding there, although there can be no doubt but that he could have procured board in the immediate vicinity of the school. While teaching at the last place referred to, Mrs. Osborn would take him to the school or drive there for him. This she did several times. Mr. Osborn was then living at Manasquan, New Jersey. Soon afterwards he moved to New York city. Before going there Mrs. Osborn promised Mr. Osborn that she would not see Stratton any more; but Stratton met them at Jersey City when on their way to New York, and it was not long before Mrs. Osborn took him to board with her in Forty-ninth street. He continued to board with her most of the time for years and until the commencement of these proceedings. And, although the intimacy between Mrs. Osborn and Stratton was enough to prompt Mr. Osborn to commence these proceedings, yet the institution of this suit was not enough to drive Stratton away from her daily presence, nor to compel her to turn her back upon him. They visited Philadelphia together. Mrs. Osborn and her son and daughter went to Niagara, and Stratton went along. She spent sometime at the Catskills, and Stratton was there with her. But it is true he paid his own bills. Mrs. Osborn was upon the witness-stand, but she did not deny having committed adultery with Stratton. Stratton was called by her, nor did he deny having committed adultery with Mrs. Osborn. She says "Stratton always conducted himself as a gentleman."

The defendant, in her answer, by way of cross-bill, sets up recriminatory charges of cruelty and desertion, and upon the argument, counsel said, if there must be a divorce, let it be on the ground of desertion, for the sake of the children. The court

*Osborn v. Osborn.*

·cannot do any such thing. I suppose every court would most gladly throw the mantle of oblivion over the faults of citizens, if, by so doing, justice could at the same time be done to the ·complaining party. I would not have made reference to this appeal did I not think that it involved a strong conviction on the part of counsel of the guilt of Mrs. Stratton.

Afterwards, on motion to open final decree and the proofs, and ·to allow the defendant to give further testimony, Vice-Chancellor Bird filed the following additional conclusions :

The defendant presents her petition, and therein says that she intended to swear that she had not committed adultery with Stratton or with any one else, and thought she had so sworn until she read the conclusions of the court. She says it was an over-sight. Her counsel says so, too. They both swear to this. She ·desires permission to place her denial under oath upon the record.

To grant this petition would be going very far, indeed ; it would seem almost like encouraging carelessness, or allowing parties to experiment upon the testimony, with the assurance that whatever may appear to be wanting to make a case can be supplied. While these and other similar considerations have great force, and while it seems quite remarkable that the question of chiefest importance should have been entirely overlooked, I find myself constrained to advise that the decree and proofs shall be opened, and that Mrs. Osborn be examined further on this one point. My chief reason for so advising is, that the state, the public, is interested in the question involved, and interested in preserving the marital relation—so much interested, that all forms and technicalities should be brushed away in order to preserve the bond between husband and wife.

In a foreclosure case, the court has gone quite as far as this. In *Sharp* v. *Wyckoff, 12 Stew. Eq. 95,* the Chancellor decided that, where the insufficiency of the proof respecting a tender is due to the inadvertence of counsel, a case may be ordered to stand over, after final hearing, for the purpose of supplying the additional proof. In that case, the application was to re-examine

the witnesses.  See, also, *Beekman* v. *Hoboken Savings Bank, 10 Stew. Eq. 331,* and *Dunham* v. *Winans, 2 Paige 24.*

And after such further testimony had been submitted, Vice-Chancellor Bird filed the following conclusions:

The additional testimony submitted by Mrs. Osborn since opening the final decree heretofore made, is not sufficiently satisfactory to overcome the strong conviction I had of her guilt.  I opened the cause that she might supply what the counsel said was an omission on his part—her denial of any sexual intercourse with Stratton.  Her denial was very emphatic, and made with an air of sincerity.  I was not a little impressed with her manner; it certainly lent considerable force to her denial.  But I must deal with the whole case—with all the testimony.

In addition to what I said in my former conclusions, I feel obliged to say that there is no satisfactory explanation of the visit of Mrs. Osborn to the home of Stratton, in Trenton, when what immediately preceded and followed is also taken into the account.  Nor does anything appear to show why the parties (Mrs. Osborn and Stratton) took so much pains or labor to be together during the year he taught school at Englewood, Bergen county, unless it be that they were more intimate than friends.  For at least nine months of that year he went from Englewood to New York, a distance of fifteen miles, and thence to Forty-ninth street, in order to board with Mrs. Osborn, leaving his own family, a wife and two children, alone in Trenton.  It is unnatural, unreasonable, and highly improbable, that he should go to this trouble and expense for the gratification of a friendly sentiment only.  I can only believe that he would so utterly abandon his wife and home, and undergo this labor and expense in view of the many suspicious circumstances which had already been developed, because of illicit intimacy between him and Mrs. Osborn.

These observations are strengthened by the proofs concerning Stratton's short stay in Newark, and speedy return to Mrs. Osborn.

The complainant is entitled to the relief prayed for.  I will so advise.

*Mr. Leon Abbett*, for appellant.

*Mr. H. H. Wainwright*, for respondent.

The opinion of the court was delivered by

GARRISON, J.

This cause was heard in the court of chancery upon bill and answer, and cross-bill, answer, replication and proofs.

The original bill was filed by John A. Osborn, complainant, against his wife, Catharine A. Osborn, for divorce, upon the ground of her adultery. Her answer denies the charge of adultery, and sets up, by way of cross-bill, desertion on the part of the complainant, and prays for a divorce from him upon that ground.

The petition of appeal and the answer thereto put in question not only the propriety of the decree against defendant for adultery, but also the refusal of the court to award a divorce to her upon the ground of the complainant's desertion.

Two questions are thus presented for consideration upon the proofs.

I have carefully examined the testimony for evidence of adultery, but have failed to discover any. Adultery is not shown, nor are the elements of lust, lewdness, depravity or secrecy, the invariable concomitants of criminal conversation, to be found in the proofs. If we give to the testimony the construction most unfavorable to the defendant, a decree based upon adultery must rest upon one of two grounds : either that opportunity is tantamount to guilt, or that a decree may rest upon a crime half proven, even though the half it rests upon is the half that is not proven.

Applying to the evidence in this cause the doctrine of the decided causes in this state upon this subject, the decree below cannot be sustained. *Berckmans* v. *Berckmans, 2 C. E. Gr. 453; Larrison* v. *Larrison, 5 C. E. Gr. 100; Marsh* v. *Marsh, 1 Stew. Eq. 196; Franz* v. *Franz, 5 Stew. Eq. 483; Whitenack* v. *Whitenack, 9 Stew. Eq. 474; Belton* v. *Belton, 11 C. E. Gr. 449; Tate*

v. *Tate*, *Id. 55; Palmer* v. *Palmer, 7 C. E. Gr. 88; Woodworth* v. *Woodworth, 6 C. E. Gr. 251; Mount* v. *Mount, 2 McCart. 162; Mayer* v. *Mayer, 6 C. E. Gr. 246; Culver* v. *Culver, 11 Stew. Eq. 163.*

The cross-bill proceeds upon the ground of desertion by the complainant. From undisputed testimony, as well as from his own admission, it appears that Osborn left his wife and family while they were living in Forty-ninth street, New York. After coming and going for a time, as his health or caprice suggested, he finally left them and took up his abode in Manasquan, where he remained until the filing of his bill in 1886, a period of nine years. Once, shortly after he thus absented himself, he returned to New York city, but went to the house of a relative, where for a short time he was ill. Hearing of his illness, his wife visited him, and as soon as he would consent she removed him to their house in Forty-ninth street. In his own testimony, complainant admits that she did this of her own accord and at her own expense. The same indication of her deportment toward him may be inferred from the fact that on this occasion she procured for him a carriage, furnished with pillows, for his more comfortable transportation. This conduct of the defendant, occurring after her husband had once left her, certainly negatives any unwillingness to have him return to their home. This attitude of mind of the defendant is not rebutted by anything in the proofs, nor is there anything to show that Osborn, after finally leaving his wife, used any inducements, or even invitations, for her to follow him to the place where he was domiciled. After his convalescence, complainant, of his own volition, left his family, giving as a reason his ill-health. From that day to this, although he has lived within an hour or two of New York, he has never made one robust effort to rejoin her, or even to find out whether she continued to dwell at the place where he left her, which, as a matter of fact, she did for a long time. His most vigorous attempt in this direction, as detailed in his own testimony, came to a speedy collapse upon his ascertaining that it would involve a paltry expense. During these nine years, he has never contributed to the support of his wife or children, nor

has he in any adequate manner accounted for either the inception or continuance of his desertion.

Unless a wife, in addition to supporting her children, must seek out her husband who has willfully left her in a strange city, and induce him to return, this complainant has obstinately and continuously deserted this defendant for a period of nine years before the filing of the cross-bill in this cause, during all of which time he was a resident of this state.

The result reached is that the decree of the court of chancery should be reversed, and a decree of divorce granted defendant on her cross-bill against the complainant for his desertion.

The record should be remitted to the court of chancery in order that a decree may be entered in accordance with these views.

For affirmance—REED—1.

For reversal—CHIEF JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, MAGIE, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, PATERSON, WHITAKER—14.